1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

8
9
10
11
12
13
14
15
16
17

| | |
|---|---|
| MICHAEL BARAKA MASON, | Case No.: 16-CV-1176 JLS (MDD) |
| Petitioner, | |
| v. | **ORDER (1) ADOPTING REPORT AND RECOMMENDATION; AND (2) GRANTING IN PART MOTION TO DISMISS** |
| DANIEL PARAMO, Warden, et al., | |
| Respondents. | |
| | (ECF No. 26) |

18      Presently before the Court are: (1) Respondent Daniel Paramo's Motion to Dismiss

19  the Petition for Writ of Habeas Corpus as a Mixed Petition, and Claim 2 as Unexhausted

20  and Untimely, ("MTD," ECF No. 18); (2) Magistrate Judge Mitchell D. Dembin's Report

21  and Recommendation ("R&R") advising that the Court should grant in part Respondent's

22  MTD, (ECF No. 26); and (3) Petitioner's Objections to the R&R, ("R&R Objs.," ECF No.

23  27). Respondent did not file a reply to Petitioner's Objections. After considering the

24  parties' arguments and the law, the Court (1) **OVERRULES** Petitioner's Objections, (2)

25  **ADOPTS** the relevant portions of the R&R, and (3) **GRANTS IN PART** Respondent's

26  Motion to Dismiss.

27  / / /

28  / / /

## BACKGROUND

Judge Dembin's R&R contains a thorough and accurate recitation of the factual and procedural histories underlying the instant Petition for Writ of Habeas Corpus. (*See* R&R 2–4.) This Order incorporates by reference the background as set forth therein.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's report and recommendation. The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). In the absence of a timely objection, however, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 510 F.2d 196, 206 (9th Cir. 1974)).

## ANALYSIS

### I.       Summary of the R&R Conclusion

On May 11, 2016 Petitioner filed a Petition for Writ of Habeas Corpus in this district. ("Petition," ECF No. 1.) Petitioner challenges his conviction on two grounds: (1) the trial court erred in admitting the preliminary hearing testimony of Hana Jabbar at trial; and (2) Petitioner received ineffective assistance of counsel when his attorney failed to challenge the trial court's decision to permit the guilty verdict to stand and the case to proceed to sentencing when Juror 4 expressed she had reasonable doubt after the verdict was given. (R&R 2[1] (citing Petition 12–13).)

On October 25, 2016, Respondent Paramo filed a Motion to Dismiss the Petition. (ECF Nos. 18, 19.) Respondent conceded that ground one was exhausted and thus

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

reviewable by this Court, but argued that ground two was unexhausted and untimely, thus counseling dismissal of both claims. (R&R 4 (citing ECF No. 18, at 9).) Petitioner acknowledged that ground two was unexhausted, but argued that the Court should stay the case pending exhaustion of ground two of the Petition, or, in the alternative, to dismiss only ground two. (*Id.* (citing ECF No. 25, at 8).)

Judge Dembin first concluded that the Petition was timely, (R&R 5), and next considered whether the Court should stay the Petition pending exhaustion of ground two in state court under either *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002), *abrogated on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007), or *Rhines v. Weber*, 544 U.S. 269 (2005). Judge Dembin first concluded that a stay under *Kelly*[2] would be futile "because the statute of limitations already expired and Petitioner is not entitled to toll the limitations period or to relate his unexhausted claim back to ground one of the Petition." (R&R 8.) Second, Judge Dembin concluded that a stay under *Rhines*[3] would be inappropriate because Petitioner did not demonstrate good cause for failing to raise his unexhausted claim in state court and that Petitioner's claim is not potentially meritorious. (*Id.* at 9–15.) Without any basis for a stay, Judge Dembin recommends that the Court partially grant Respondent's motion and dismiss ground two of the Petition with prejudice. (*Id.* at 16.)

## II.    Summary of Petitioner's Objections

Petitioner solely objects to Judge Dembin's conclusion that a stay is not warranted under *Rhines*. (R&R Objs. 2.) First, Petitioner argues that Judge Dembin erred in relying

---

[2] "*Kelly* permits a district court to dismiss unexhausted claims and stay the remaining claims pending exhaustion of the dismissed claims. *Kelly*, 315 F.3d at 1070–71. The petitioner must seek to add the dismissed claims back in through amendment after exhausting them in state court before the AEDPA statute of limitations expires. *King v. Ryan*, 564 F.3d 1133, 1138–41 (9th Cir. 2009)." (R&R 6–7.)

[3] "*Rhines* permits a district court to stay a mixed petition in its entirety. *King*, 564 F.3d at 1139–40. To stay the entire mixed petition without dismissing unexhausted claims, the petitioner must show good cause for failing to exhaust the claims in state court before filing the federal petition and that the unexhausted claims are not 'plainly meritless.' *Rhines*, 544 U.S. at 277–78. A stay under *Rhines* is inappropriate where the petitioner has engaged in 'abusive litigation tactics or intentional delay.' *Id.*" (R&R 8–9.)

on the prejudice prong of the *Strickland*[4] standard, as applied to claims for ineffective assistance of counsel, because it has no bearing on the "good cause" determination under *Rhines*. (*Id.* at 3.) Second, as to the potential merit of Petitioner's claim, Petitioner argues that Judge Dembin's reliance on the *Strickland* prejudice standard improperly heightened the burden for ordering a stay. (*Id.* at 4.)

## III.    Court's Analysis

Given Petitioner's Objections, the Court will review, *de novo*, whether the Court should stay the Petition pending exhaustion of ground two pursuant to *Rhines*.

*Rhines* permits a district court to stay a mixed petition (i.e., a petition with exhausted and unexhausted claims) in its entirety. *King v. Ryan*, 564 F.3d 1133, 1139–40 (9th Cir. 2009). To stay the entire mixed petition without dismissing unexhausted claims, the petitioner must show (A) good cause for failing to exhaust the claims in state court before filing the federal petition, (B) that the unexhausted claims are not "plainly meritless," and (C) that the petitioner has not engaged in "abusive litigation tactics or intentional delay." *Rhines*, 544 U.S. at 277–78; *see also King*, 564 F.3d at 1139.

### A. Good Cause

The first factor in a *Rhines* analysis is whether Petitioner has demonstrated good cause for failing to raise his unexhausted claim in state court. "There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust." *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014); *Pace v. DiGuglielmo*, 544 U.S. 408, 416–17 (2005). But the Ninth Circuit has recently explained that

> [t]he good cause element is the equitable component of the *Rhines* test. It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court. As such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure.

---

[4] *Strickland v. Washington*, 466 U.S. 668 (1984).

*Blake*, 745 F.3d at 982 (citing *Pace*, 544 U.S. at 416). Thus, the *Blake* Court held that ineffective assistance "by post-conviction counsel can be good cause for a *Rhines* stay" where a petitioner's showing of good cause is concrete and reasonable, not a bare allegation of ineffective assistance of counsel. *Id.* at 983.

As an initial matter, the Court agrees with Petitioner that a discussion of the merits of Petitioner's ineffective assistance of counsel ("IAC") claim should not be considered in the "good cause" portion of the *Rhines* analysis. Rather, the Court should simply determine whether Petitioner's excuse for failing to exhaust the claim is reasonable and supported by sufficient evidence. *See Blake*, 745 F.3d at 982.

The Court finds that Petitioner has demonstrated good cause under *Rhines*. As background, part of Petitioner's IAC claim is that his appellate counsel failed to raise any issues regarding Juror 4 in his appeal. (R&R 11 (citing ECF No. 25, at 5; Lodg. Nos. 3, 5, 7).) Specifically, Juror 4 expressed she had "reasonable doubt . . . on certain counts" after the guilt phase and during the penalty phase of Petitioner's trial. (*Id.* at 10 (citing ECF No. 1, at 104).) After some discussion, Petitioner's trial counsel requested that the jury return to the jury room and reopen their deliberations or, in the alternative, a mistrial. (*Id.* at 10–11 (citing ECF No. 1, at 104–106; 157).) The trial court denied the requests. (*Id.* (citing ECF No. 101, at 127–176).) While Petitioner's *trial* counsel raised the issue, Judge Dembin found that Petitioner's *appellate* counsel failed to raise any issues regarding Juror 4. (R&R 11.) Importantly for the "good cause" analysis, Judge Dembin found that

> [t]he record supports Petitioner's argument that appellate counsel failed
> to raise any issues regarding Juror 4. (ECF No. 25 at 5; Lodg. Nos. 3,
> 5, 7). Appellate counsel did not include this claim in the appellate brief,
> reply brief or the petition for review in the California Supreme Court,
> despite the fact that the Reporter's Transcript includes approximately
> 65 pages on the issue. (Lodg. Nos. 3, 7; ECF No. 1 at 99–122, 127–152,
> 157–176). Petitioner has also shown that he relied upon the assurances
> of his trial and appellate counsel that they would raise any necessary
> claims for him. (*See* ECF No. 1 at 13) (indicating that Petitioner thought
> his attorney raised this issue in his Petition for Review). Petitioner has

made a sufficient showing that his appellate attorney may have acted unreasonably because he had notice of the juror claim and failed to exhaust the claim by presenting it to the state's highest court.

(*Id.* at 11–12.) After a review of the record, the Court agrees with Judge Dembin's assessment and thus finds that Petitioner has adequately demonstrated good cause for failing to raise his unexhausted claim in state court (specifically, he demonstrated that he relied on his appellate counsel to raise such claims on his behalf). Nothing more is needed for this consideration. Thus, while Judge Dembin goes on to assess the merits of Petitioner's IAC claim in his "good cause" analysis, (*id.* at 12–15), and ultimately concludes that Petitioner has not shown "good cause" as a result of that assessment, that analysis is more appropriately presented under the claim merit analysis. Accordingly, the Court will consider that portion of Judge Dembin's analysis below, *infra* Part III.B.

### B. Potential Merit of Petitioner's Claim

The second factor in a *Rhines* analysis is whether a petitioner's claims are "plainly meritless," *Rhines*, 544 U.S. at 277, or, stated differently, are "potentially meritorious," *id.* at 278.

As a threshold matter, the Court disagrees with Petitioner's argument that the Court cannot consider the prejudice prong of *Strickland* in assessing his IAC claim. As discussed below, prejudice is a required element of an IAC claim, and thus the Court must consider it to determine whether Petitioner's IAC claim has some merit. *See, e.g.*, *Gonzalez v. Wong*, 667 F.3d 965, 982 (9th Cir. 2011) (considering the prejudice/materiality prong of a potential *Brady v. Maryland*, 373 U.S. 83 (1963), violation in the context of a *Rhines* merits analysis). But Petitioner further argues that the second *Rhines* consideration, whether a claim is "plainly meritless" or "potentially meritorious," is a generous standard and thus does not require him to demonstrate that he will definitely prevail or even that he is likely to prevail on the merits. (R&R Objs. 4.) The Court agrees with Petitioner on this point, and notes that this approach is consistent with the Ninth Circuit's jurisprudence in *Rhines* analyses. *See, e.g.*, *Gonzalez*, 667 F.3d at 980 ("Our discussion below is only to

demonstrate why we conclude that Gonzales has a <u>colorable</u> or potentially meritorious Brady claim such that a <u>reasonable state court could find</u> a Brady violation." (emphases added).) Accordingly, the Court conducts its analysis of Petitioner's IAC claim with this standard in mind.

"In order to establish ineffective assistance of counsel, a petitioner must prove both deficient performance by his counsel and prejudice caused by the deficiency." *Gonzalez*, 667 F.3d at 987. "To demonstrate deficient performance [Petitioner] must show that counsel's performance 'fell below an objective standard of reasonableness' based on 'the facts of the particular case [and] viewed as of the time of counsel's conduct.'" *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688–90 (1984)). "In order to establish prejudice [Petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (citing *Strickland*, 466 U.S. at 694).

As discussed, the crux of Petitioner's IAC claim is that his counsel—both trial and appellate—failed to inquire into the reason for Juror 4's doubt or raise the issue on appeal. (R&R Objs. 5; *see also* ECF No. 25, at 4–5; ECF No. 1, at 13.) Specifically, Petitioner argues that as a result of Juror 4's doubt, the jury's verdict was not unanimous, thus violating his constitutional rights to a unanimous jury verdict. (R&R 12; Objs 4–5; ECF No. 25, at 5; ECF No. 1, at 13.) Judge Dembin recounted the factual and procedural basis for Petitioner's IAC claim as follows:

> Petitioner focuses on circumstantial evidence showing that "counsel [failed] to raise any issues regarding Juror 4 [which shows] counsel's ineffective assistance [and] demonstrates good cause for failing to exhaust his claim." (ECF No. 25 at 5). In his Petition, Petitioner attaches a Reporter's Transcript where Juror 4 expressed she had "reasonable doubt . . . on certain accounts" after the guilt phase and during the penalty phase of the trial. (ECF No. 1 at 104). The record reflects that the trial judge asked Juror 4 why she did not express her reasonable doubt when he polled the jury. (ECF No. 1 at 104–05). Juror 4 stated she had "basically overcome the doubt that [she] had. And it

7

continued to come up in [her] mind [after the verdicts were returned and during the intervening time.]" (*Id.* at 105). Juror 4 then stated that at the time the verdict was given, she supported the verdict and it was her verdict, but that she still wanted to speak privately with the judge to discuss "very specific" allegations or charges. (*Id.* at 106). The trial judge asked whether Juror 4 understood what reasonable doubt means and whether she had done outside research. (*Id.* at 105–06). Juror 4 explained she understood what reasonable doubt means and that she had not done outside research. (*Id.*). The trial judge then explained that speaking privately with Juror 4 would be inappropriate and indicated that nothing Juror 4 said raised issues regarding juror misconduct. (*Id.*).

In response to Juror 4's statement, Petitioner's trial counsel requested "the jury be directed to return to the jury room and reopen their deliberations concerning issues in the guilt phase," or in the alternative, requested a mistrial. (*Id.* at 157). The People requested the court determine whether Juror 4 should be excused for cause. (*Id.* at 169). On November 16, 2012, the court permitted oral argument on the issues and ultimately concluded that "[t]here is nothing to correct at the present time. Those verdicts were polled and recorded. The fact she has now had some buyer's remorse, as suggested, that opens a pandora's box for incredible mischief." (*Id.* at 170). The court did not reopen jury deliberations, did not grant a mistrial and did not excuse Juror 4 for cause. (*Id.* at 127–176).

(R&R 10–11.)

As an initial matter, the Court agrees with Petitioner and Judge Dembin that, because his case was a capital case, Petitioner had a constitutional right to a unanimous jury under California law and possibly under Federal law as well. (R&R 12; *see also People v. Collins*, 17 Cal. 3d 687, 693 (1976) (California law requires unanimous jury verdict in criminal cases); *cf. Schad v. Arizona*, 501 U.S. 624, 634 n.5 (1991) ("[A] state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict . . . ."). Nevertheless, Judge Dembin found that Petitioner had not made a well-argued claim of unanimous jury infringement or juror misconduct. (R&R 12.) Specifically, Judge Dembin found that

[e]ven if a unanimous jury is constitutionally required, there was a unanimous jury verdict and, when individually polled, no juror expressed any equivocation or hesitation regarding the verdict. (Lodg. No. 1-48 at 7915–30). Specifically, the Court asked "Juror No. 4, were these and are these your personal verdicts as read by the court?" (*Id.* at 7929). Juror 4 responded "yes." (*Id.*). Additionally, Juror 4 told the court that she overcame her reasonable doubt before giving the verdict. (ECF No. 1 at 105). Accordingly, no right to a unanimous jury verdict was infringed in this case. *Leon v. Cate*, 617 Fed. App'x 783, 783 (9th Cir. 2015) ("The jury returned a verdict, the clerk read it in open court, the jury collectively affirmed it without dissent, and it was recorded. . . . [T]he validity of the verdict was not subject to attack at that point unless [the petitioner] established that the jury committed prior misconduct in reaching the verdict."); *see Fuentes v. Adams*, No. SA CV 06-182-GW (CW), 2015 U.S. Dist. LEXIS 180156, at *47-48 (C.D. Cal. Sept. 2, 2015) (A Magistrate Judge's Report and Recommendation, which found no infringement of a unanimous jury verdict where the record showed that all jurors had been po[l]led and supported the verdict); *see also Fuentes v. Adams*, No. SA CV 06-182-GW (CW), 2016 U.S. Dist. LEXIS 98346 (adopting the Magistrate Judge's Report and Recommendation).

(R&R 12–13.)

But despite the appearance of a unanimous jury verdict, Petitioner's core objection to Judge Dembin's analysis is premised on <u>unexplored</u> potential juror misconduct. Specifically, Petitioner acknowledges that while the jury was unanimously polled, the "record reflects that Juror 4's statements raised serious questions regarding whether [Petitioner] had been deprived of a unanimous jury not influenced by juror misconduct [because] neither the trial court nor [Petitioner's] own trial counsel insisted on an adequate inquiry to ensure that [Petitioner's] rights were protected." (R&R Objs. 4–5.)

Judge Dembin disagreed with this juror misconduct claim, finding that

[a] unanimous verdict may still be attacked if the verdict was subject to juror misconduct prior to reaching the verdict. *Leon*, 617 Fed. App'x at 783. Thus, the Court must consider whether the Sixth Amendment's guarantee of the right to a "fair trial by a panel of impartial, 'indifferent' jurors" to criminal defendants was infringed when Juror 4 expressed

9

reasonable doubt after conviction. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *see Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).

"If only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel." *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir. 1997). In the event of a jury misconduct or juror bias allegation, the court should hold a hearing with all interested parties. *See Remmer v. United States*, 347 U.S. 227, 229–30 (1954); *see also Smith v. Phillips*, 455 U.S. 209, 216–17 (1982). However, the "near-universal and firmly established common-law rule in the United States flatly prohibit[s]" the admission of juror testimony to impeach a verdict except where "an extraneous influence" affected the verdict. *Tanner v. United States*, 483 U.S. 107, 117 (1983) (citations omitted); *see also McDonald v. Pless*, 238 U.S. 264, 269 (1915) (generally, jurors may not impeach their own verdict). Both the Federal Rules of Evidence and the California Evidence Code prohibit the use of juror testimony to impeach a verdict when testimony relates to the internal mental process of the verdict. See FED. R. EVID. 606(b); CAL. EVID. CODE § 1150(a).

The Court finds that there was no evidence of juror misconduct in this case. Juror 4's expression of reasonable doubt about specific allegations or charges after the verdict was given concerns her thought process and the jury's internal deliberations, as opposed to testimony regarding extrinsic influence or juror bias, which is "flatly prohibited" to impeach the jury's verdict. *See Tanner*, 483 U.S. at 117. Thus, Juror 4's statement does not constitute grounds for reversal of the verdict. *See Panella v. Marshall*, 434 Fed. App'x 603, 605 (9th Cir. 2011); *see also Franklin v. McEwen*, No. SACV 12-1514-DDP (OP), 2013 U.S. Dist. LEXIS 180861, at *46-50 (C.D. Cal Sept. 26, 2013) (finding a juror's post-verdict statement apologizing for voting to convict the petitioner and explaining "that 'most of the jurors wanted to give defendant not guilty'" insufficient to reverse the verdict).

(R&R 14–15.)

Petitioner objects to this conclusion, arguing that without conducting any further inquiry of Juror 4, "it was impossible to determine whether the juror simply had 'buyer's remorse,' or whether her concerns were based on some other factors such as having been

coerced or having been influenced by impermissible juror conduct." (R&R Objs. 4–5.) In other words, Petitioner argues that this conclusion "fails to recognize the inadequacy of the inquiry conducted and trial counsel's ineffective representation. It is precisely due to the trial court's failure to conduct an adequate inquiry with respect to Juror 4, and trial counsel's ineffective failure to request such an inquiry, that the reasons for Juror 4's reasonable doubt remains unknown. Thus it is impossible to conclude that juror misconduct did not occur, and in fact the nature of Juror 4's approach to the trial court suggests that her concerns were indeed grounded in something other than her own state of mind." (*Id.* at 7–8.)

After a review of the record, the Court disagrees with Petitioner, and in particular Petitioner's suggestion that "it is impossible to conclude that juror misconduct did not occur, and in fact the nature of Juror 4's approach to the trial court suggests that her concerns were . . . grounded in something other than her own state of mind." (*Id.*) To the contrary, the record shows that the court questioned Juror 4 about her concerns and Juror 4 responded that her concerns were premised on <u>her</u> understanding of reasonable doubt, not any jury—or other—misconduct. Juror 4 wrote a note to the court stating that she "would like to address the court regarding reasonable doubt." (ECF No. 1, at 99–100.) Juror 4 asked to meet in private, and the court denied her request. (*Id.* at 103–104.) When asked what she wanted to address regarding reasonable doubt, Juror 4 said she "wanted to address . . . just the idea of reasonable doubt . . . ." (*Id.* at 104.) The court asked if she did not understand the definition of reasonable doubt, and she replied "[n]o, no. I understand." (*Id.*) Juror 4 simply "wanted to address . . . the reasonable doubt that [she] had on certain counts." (*Id.*)

Then the following exchange took place:

Q [court]: Why did you vote guilty then and find those allegations to be true? Why did you—when I looked you in the eye and polled the jurors individually and asked you, "Were these and are these your verdicts as I've just read them," why didn't you tell me you had some reasonable doubt?

16-CV-1176 JLS (MDD)

A [Juror 4]: Yeah, you know, I—I, ah, should have said it then.

Q: Yes, you should have. Why didn't you?

A: I—I didn't. I went with—we were—had been deliberating and—and, um, I thought that I could just—I thought I had, um, basically overcome the doubt that I had. And it continued to come up in my mind.

Q: After the verdicts had been returned?

A: Correct.

Q: And during the intervening time?

A: Correct.

Q: Now you thought about it some more?

A: Correct.

Q: So when you indicated those were and are your verdicts—

A: Yes.

Q: —they were?

A: Yes.

Q: They were your verdicts; is that correct?

A: Sure. Yes.

Q: Well, have you done some independent research then on reasonable doubt?

A: No. Just in thinking about it.

Q: What?

A: In thinking about it, in—

Q: Well, you understand the definition of reasonable doubt.

A: Yes.

Q: Is that a "yes"?

A: Yes.

Q: We—you heard that repeatedly throughout the trial here in the courtroom and you had that in writing, that definition.

A: I did.

Q: Intellectually, if you will, you understood what those words mean in the context of proof beyond a reasonable doubt?

A: Yes.

Q: Okay. Step outside for a minute. Let me talk to counsel.

A: Okay. And if I may, too, the purpose of this was—I mean, I thought I would be able to discuss more in detail, ah, about what may be—I don't know—with you in detail. But if that's impossible—

Q: Well, the concerns you have relate to specific allegations or specific—

A: Yes.

Q: —charges?

A: Yeah. I mean, very specific. It's totally specific.

Q: Well, that may or may not be appropriate.
A: Okay.
Q: I don't think it's appropriate at this point.
A: Okay.
THE COURT: Um, all right. Why don't you step outside just for a moment.

(*Id.* at 105–07.) Viewing this exchange as a whole, the Court finds that, contrary to Petitioner's objections, Juror 4's concerns appeared to center on her internal struggle with reasonable doubt, particularly after she delivered her verdict. Such testimony is "flatly prohibited" to impeach the jury's verdict. *See Tanner*, 483 U.S. at 117. True, as Petitioner notes the court did not conduct a further inquiry into Juror 4's concerns or specifically ask why she wanted to meet privately with the court. But there is nothing in her exchange with the court that suggests that such a request was to discuss juror—or other—misconduct that might otherwise have supported a further investigation into Juror 4's concerns. Nor does Petitioner provide any specific citation to the record that would so suggest. And, even then, not all allegations of juror misconduct are admissible. *See, e.g.*, *Franklin v. McEwen*, 2013 WL 6817662, at *18 (C.D. Cal. Dec. 20, 2013) (citing *Estrada v. Scribner*, 512 F.3d 1227, 1237 (9th Cir. 2008) (juror's declaration that he felt pressured to vote guilty inadmissible evidence of subjective mental process); *Panella v. Marshall*, 434 Fed. App'x 603, 605 (9th Cir. 2011) (rejecting habeas claim that juror misconduct—foreperson's non-physical coercion of another juror to change her vote—warranted reversal of conviction where record supported state court's finding that allegations described no more than permissible "heated discussions that naturally occur at times during jury deliberations")).

In sum, the Court finds that Petitioner's claims that his right to a unanimous jury was infringed or that there was potential jury misconduct are not potentially meritorious. Consequently, his IAC claim premised on trial counsel's failure to conduct further investigation into Juror 4 and appellate counsel's failure to raise the issue on appeal is also not potentially meritorious (i.e., Petitioner suffered no prejudice based on his counsel's alleged failures in this regard). Thus, the Court concludes that a stay under *Rhines* is

inappropriate. (*Cf.* R&R 14–15 ("Because Petitioner's right to a unanimous jury was not infringed and there was no juror misconduct, any deficienc[ies] in failing to raise these issues on appeal or in state post-conviction applications for collateral relief were not prejudicial under *Strickland v. Washington*. This is inadequate to show ineffective assistance of counsel for purposes of a *Rhines* stay.").) Accordingly, the Court **OVERRULES** Petitioner's Objections. [5]

## CONCLUSION

For the reasons stated above, the Court (1) **OVERRULES** Petitioner's Objections, (2) **ADOPTS** the relevant portions of Judge Dembin's R&R, and (3) **GRANTS IN PART** Respondent's Motion to Dismiss. Accordingly, the Court **DISMISSES WITH PREJUDICE** only ground two of the Petition. Petitioner may proceed with ground one of his Petition in this Court.

**IT IS SO ORDERED.**

Dated:  June 6, 2017

Hon. Janis L. Sammartino
United States District Judge

---

[5] For this reason the Court does not discuss the third factor of the *Rhines* analysis.

16-CV-1176 JLS (MDD)