# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BARAKA MASON, <br><br> Petitioner, <br><br> v. <br><br> DANIEL PARAMO, Warden, et al., <br><br> Respondents. | Case No.: 16-CV-1176 JLS (MDD) <br><br> **ORDER ADOPTING REPORT AND RECOMMENDATION RE PETITION FOR HABEAS CORPUS** <br><br> (ECF No. 34) |

Petitioner Michael Baraka Mason has filed a Petition for Writ of Habeas Corpus, ("Petition," ECF No. 1), to which Respondent Daniel Paramo has filed a Response, (ECF No. 30). Petitioner then filed a Traverse, (ECF No. 33). Magistrate Judge Mitchell D. Dembin issued a Report and Recommendation, recommending the Court deny Petitioner's Petition, ("R&R," ECF No. 34). Judge Dembin ordered objections to the R&R to be filed no later than April 13, 2018. Petitioner did not file objections.

Having considered the Parties' arguments and the law, as well as the underlying state court record, the Court **ADOPTS** Judge Dembin's Report and Recommendation, and **DENIES** Petitioner's Petition for Habeas Corpus.

/ / /

/ / /

## BACKGROUND

Judge Dembin's R&R contains a thorough and accurate recitation of the factual and procedural histories underlying the instant Petition for Writ of Habeas Corpus. (*See* R&R 2–11.) This Order incorporates by reference the background as set forth therein.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's report and recommendation. The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). In the absence of a timely objection, however, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 510 F.2d 196, 206 (9th Cir. 1974)).

## ANALYSIS

### I. Summary of the R&R Conclusion

On May 11, 2016, Petitioner filed a Petition for Writ of Habeas Corpus in this district. Petitioner was convicted in state court and challenges his conviction on two grounds: (1) the trial court erred in admitting the preliminary hearing testimony of Hana Jabbar at trial; and (2) Petitioner received ineffective assistance of counsel when his attorney failed to challenge the trial court's decision to permit the guilty verdict to stand and the case to proceed to sentencing when Juror 4 expressed she had reasonable doubt after the verdict was given. (Petition 12–13.)[1] Respondent previously filed a Motion to Dismiss Petitioner's second claim, which the Court granted pursuant to a previous R&R. (*See* ECF No. 28.) Thus, only Petitioner's first claim remains.

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

| | |
|---|---|
| 1 | As to his remaining claim, Petitioner's argues that the Court of Appeal erred by finding that the prosecution's efforts to find Ms. Jabbar demonstrated a good faith attempt to produce a witness. (Petition 12; Traverse 7.) Judge Dembin examined the Court of Appeal's conclusion that the prosecution made good faith and diligent efforts to locate Hana Jabbar. (R&R 20.) Judge Dembin surveyed the various efforts undertaken by Mr. Cahill to locate Ms. Jabbar including attempting to contact her, speaking with people close to her, and searching among the homeless population where Ms. Jabbar was reportedly residing. (*Id.*) Petitioner suggested additional, alternative search methods to locate Ms. Jabbar, but Judge Dembin found that the prosecution is not required to exhaust every possible action. Accordingly, Judge Dembin determined that the California Court of Appeal's decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. (*Id.*) |

Alternatively, Judge Dembin concluded that even if the trial court erred in allowing Ms. Jabbar's statement at trial, the error did not have a substantial and injurious effect on the jury's verdict. (*Id.*) There was additional evidence produced at trial include Petitioner's DNA on a cigarette at a crime scene, Mr. Bell admitted taking part in the shooting and said that Petitioner was likewise involved, and Petitioner's photo was twice identified on the television program America's Most Wanted. (*See id.* at 20–21.) Judge Dembin finds any potential error by the trial court to be harmless.

## II. Court's Analysis

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant habeas relief only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court . . . ; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

Under § 2254(d)(1), federal law must be "clearly established" to support a habeas claim. Clearly established federal law "refers to the holdings, as opposed to the dicta, of

3

[the United States Supreme] Court's decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court's decision may be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 406. A state court decision does not have to demonstrate an awareness of clearly established Supreme Court precedent, provided neither the reasoning nor the result of the state court decision contradict such precedent. *Early*, 537 U.S. at 8.

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. An unreasonable application may also be found "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *see Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).

Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706–07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). Instead, the state court's application must be "objectively unreasonable." *Id.*; *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Even if a petitioner can satisfy § 2254(d), the petitioner must still demonstrate a constitutional violation. *Fry v. Pliler*, 551 U.S. 112, 119–22 (2007). With this general framework in mind, the Court turns to Petitioner's claim.

The Sixth Amendment's Confrontation Clause, applied to the States through the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965), requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. There are occasions, however, where witness testimony may be presented without the opportunity to confront the witness. There are two requirements for presenting testimony without an available witness. First, *Barber v. Page*, 390 U.S. 719, 724–25 (1968), held that "a witness is not 'unavailable' for purposes of the . . . confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Second, a court will allow only testimony that has sufficient "indicia of reliability" as to be trustworthy for admission. *Ohio v. Roberts*, 448 U.S. 56, 65 (1980) (quoting *Mancusi v. Stubbs*, 408 U.S. 204, 213 (1972)), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). Petitioner only argues that the first element was not met; the prosecution failed to meet its good faith burden to find Ms. Jabbar. In *Roberts*, the Supreme Court revisited the good faith requirement and reiterated the "lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *Id.* at 74 (alteration in original) (quoting *California v. Green*, 399 U.S. 149, 189 n.22 (1970) (Harlan, J., concurring)).[2]

Here, the California Supreme Court denied Petitioner's appeal without comment, (Lodgment No. 8, ECF No. 19-64), and the California Court of Appeal issued the last reasoned decision, (*see* Lodgment No. 6, ECF No. 19-62). In such cases, federal habeas courts apply the presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Therefore, the Court evaluates the California Court of Appeal's decision under 28 U.S.C. § 2254(d).

---

[2] Because Petitioner only contests the first prong of the two-part *Roberts*' standard, the Court does not address the second prong requiring "indicia of reliability."

In evaluating Petitioner's witness unavailability claim, the California Court of Appeal cited *People v. Herrera*, 49 Cal. 4th 613, 622–23 (2010), which in turn explicitly relies on both *Barber* and *Roberts*. (Lodgment No. 6, at 15.) In *Herrera*, the California Supreme Court recognized that the California Evidence Code demands a similar requirement for establishing a witness's unavailability as *Barber* and *Roberts*. 49 Cal. 4th at 622. Thus, the Court of Appeal correctly identified the controlling Supreme Court precedent to evaluate witness unavailability. The only remaining question is whether the court unreasonably applied the precedent to the facts of Petitioner's case. *Williams*, 529 U.S. at 407.

The Court agrees with Judge Dembin that the California Court of Appeal's application of the holding to the facts in Petitioner's case was reasonable. Because this case falls under the "unreasonable application" clause of § 2254(d), Petitioner may prevail "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Woodall*, 134 S. Ct. at 1706–07 (quoting *Richter*, 562 U.S. at 103).

The Supreme Court's decision in *Roberts* is instructive. There, the prosecutor attempted for four months to locate an unavailable witness. *Roberts*, 448 U.S. at 75. The prosecutor spoke to the witness' mother, who stated she did not know of her daughter's whereabouts and had no way to contact her. *Id.* The prosecutor served five subpoenas on the witness at her parents' home in the four months prior to trial. *Id.* The Court determined that the State had met its "duty of good faith effort" to establish witness unavailability. *Id.*

In *Hardy v. Cross*, 565 U.S. 65, 71–72 (2011) (per curiam), the Supreme Court reiterated that "the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how uncompromising." The Supreme Court applied that standard to the facts in *Hardy* where the Seventh Circuit faulted the prosecution for failing to contact the witness's current boyfriend, failing to make inquiries at the cosmetology school where the witness had once been enrolled, and neglecting to serve the witness a subpoena after she expressed fear about testifying at trial. *See id.* at 70–71. The Supreme

Court disagreed that these additional, incremental steps were required. The Court concluded that "the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken." *Id.* at 72.

Here, the Court of Appeal surveyed the undisputed facts proffered by the prosecution to meet the good faith duty to find Ms. Hana Jabbar:

> [T]he facts surrounding the prosecution's efforts to secure Hana's attendance at trial are essentially undisputed. Cahill, the prosecution's investigator, spoke with Hana prior to Mason's trial and told her her testimony would be required. Later, Cahill attempted to contact Hana by cell phone, but she did not respond. Cahill spoke with the people closest to Hana about her whereabouts and determined she was homeless. Cahill went to the area where she was reportedly staying and showed her picture to other homeless people in an effort to find her. Cahill himself drove through the area multiple times looking for her. Cahill also reviewed a database of contacts with law enforcement and emergency personnel and found no mention of Hana.

(Lodgment No. 6, at 16.) The court also recognized that Ms. Jabbar's closest friends were not in contact with her and did not know her location. (*Id.*) The court concluded that the prosecution's efforts were reasonable under the circumstances.

In reaching this finding, the court did not credit Petitioner's argument, renewed in his habeas petition, that the prosecution could have secured Ms. Jabbar as a material witness pursuant to California Penal Code § 1332.[3] (*Id.* at 17.) The court reasoned that

---

[3] Section 1332 provides, in pertinent part:
> (a) [W]hen the court is satisfied, by proof on oath, that there is good cause to believe that any material witness for the prosecution or defense . . . will not appear and testify unless security is required, at any proceeding in connection with any criminal prosecution . . . , the court may order the witness to enter into a written undertaking to the effect that he or she will

Mr. Cahill reached out to Ms. Jabbar after Morris's trial and Ms. Jabbar did not explicitly resist Cahill's admonition that she would have to testify at Petitioner's trial. (*Id.*) The Court of Appeal recognized that confining a witness, who had not committed a crime, is a drastic measure that should be used sparingly. (*Id.* (citing *People v. Cogswell*, 48 Cal. 4th 467, 477 (2010)).) The court determined that Petitioner had not demonstrated that a drastic measure, such as confining Ms. Jabbar, would be warranted. (*Id.*)

Petitioner renews his argument that the prosecution could have taken additional available measures to secure Ms. Jabbar's presence at trial. (Traverse 8.) According to Petitioner, the prosecution should have issued a material witness warrant for Ms. Jabbar's arrest. (*Id.* (citing Cal. Penal Code § 1332; and *People v. Roldan*, 205 Cal. App. 4th 969, 978 (Ct. App. 2012)).) Petitioner would apply the Ninth Circuit's holding in *Daboul v. Craven*, 429 F.2d 164, 167 (9th Cir. 1970), which addressed a situation where the prosecution failed to use the Uniform Act to produce a witness. (Traverse 8.) Petitioner admits that the Uniform Act does not apply directly to his case, but argues the reasoning is persuasive. (*See id.*)

*Daboul* is distinguishable. That case relied on the Supreme Court's reasoning in *Barber* and stated "if the prosecution fails to make use of the Uniform Act [to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings], it has not made the required 'good faith effort' and cannot use the prior testimony." *Daboul*, 429 F.3d at 167 (citing *Barber*, 390 U.S. at 723–24). Yet, *Barber*'s holding does not require that the *per se* failure to use the Uniform Act (or a similar statute) is a constitutional violation. In

---

appear and testify at the time and place ordered by the court or that he or she will forfeit an amount the court deems proper.
(b) If the witness required to enter into an undertaking to appear and testify . . . refuses compliance with the order for that purpose, the court may commit the witness, if an adult, to the custody of the sheriff . . . until the witness complies or is legally discharged.

Cal. Penal Code § 1332(a)–(b).

*Barber*, the Supreme Court noted the witness was in federal custody and the prosecution could have issued a writ of habeas corpus ad testificandum to compel the prisoner to testify at trial. 390 U.S. at 723–24. Instead, the prosecution "made absolutely no effort to obtain the presence of [the witness] at trial other than to ascertain he was in a federal prison outside Oklahoma." *Id.* at 723. Thus, *Barber* only held that the prosecution had to show a good faith effort to obtain a witness's personal appearance at trial and failed to do so because it made *no effort* to obtain the witness. Justice Marshall's opinion summarized the relevant inquiry and result as follows:

> In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly.

*Id.* at 724–25. *Daboul* relied on the *Barber* court's dicta to support its conclusion, but this Court is only bound by Supreme Court holdings. As *Roberts* recognized, the relevant inquiry is one of reasonableness, not a *per se* rule that failure to use the Uniform Act (or similar measures) necessitates an unreasonable application of law.

Petitioner also cites *People v. Roldan*, 205 Cal. App. 4th at 978. There, the witness was held in custody for several months before a preliminary hearing and was the key witness for the prosecution. *Id.* at 980, 982. The Court of Appeal reasoned that the State's good faith requirement to produce a witness for trial included "the duty to use reasonable means to *prevent a present witness from becoming absent*." *Id.* at 980 (quoting *People v. Louis*, 42 Cal. 3d 969, 991 (1986)); and citing *United States v. Tirado–Tirado*, 563 F.3d 117, 124 (5th Cir. 2009)). Thus, *Roldan* rests on the fact that the key witness was in custody, the government knew the witness was material, and released the witness rather than continuing the detention until trial.

The dispositive fact here is that Ms. Jabbar, unlike the witnesses in *Barber* and *Roldan*, was not in custody. Moreover, the prosecution had no indication that she might not testify until she failed to appear for Morris's trial. Her failure to appear at Morris's trial was the earliest instance where the prosecution could have been on notice that Ms. Jabbar might not be available for trial. But, the State did not know her whereabouts. Even if the State issued a warrant for her arrest pursuant to California Penal Code § 1332, Petitioner does not explain how using section 1332 would have allowed the prosecution to find Ms. Jabbar. Mr. Cahill could not find Ms. Jabbar; he put her name in to the Officer Notification System and searched the "ARJIS" system, which would have indicated that Ms. Jabbar had contact with law enforcement or medical personnel. (*See* Lodgment No. 1-21, ECF No. 19-21, at 194–95 (trial transcript).) Neither was successful. If Ms. Jabbar had no police contact how could have the prosecution detained her pursuant to § 1332? Petitioner's theory does not explain this question. Nor can it. This is not an instance where Ms. Jabbar was in a known location and the State failed to secure her—no one knew where she was. Thus, *Daboul* and *Roldan*'s logic is inapplicable here.

Petitioner's only other suggestion would be for Mr. Cahill to visit homeless shelters and contact operators of homeless shelters whether they saw Ms. Jabbar. (Traverse 9.) Petitioner contends that contacting homeless shelters would have required minimally more effort and there is a possibility that such a minimal but affirmative measure might have produced Ms. Jabbar. (*Id.*) Petitioner concludes that this further measure "is what the federal standard unquestionably requires." (*Id.*) Yet, Mr. Cahill testified that "[e]very day on my way in I'll swing through the East Village area, go up and down the streets, get out every now [sic] and talk to people, show her photo, see if any of the other homeless people recognize her or see her down there." (Lodgment No. 1-21, at 195.) Petitioner faults Mr. Cahill for not reaching out to homeless shelters, but not even Ms. Jabbar's own family knew her whereabouts. Petitioner's contention that the federal standard unquestionably required Mr. Cahill to contact homeless shelters is simply not supported by the law. As

*Hardy* makes clear, "the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how uncompromising." 565 U.S. at 71–72.

Mr. Cahill's efforts were reasonable under the circumstances. Mr. Cahill repeatedly tried to reach Ms. Jabbar using the means he had previously used to contacted her. He reached out to her friends and family, searched areas where she was likely to be, and surveyed law enforcement databases. Mr. Cahill drove through the area where Ms. Jabbar was reported to be every day on his way to work. Of course, there will always be some further step the State possibly could have taken, but the prosecution is not required to "exhaust every avenue of inquiry." *Hardy*, 565 U.S. at 71–72.

Furthermore, a federal habeas court is not merely reviewing the reasonableness of the State's actions in a vacuum—this Court is reviewing the decision of the California Court of Appeal, which must be given further deference. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Petitioner has not demonstrated such an error. In light of the foregoing, the Court **ADOPTS** the R&R and **DENIES** Petitioner's remaining habeas claim.

## III. Evidentiary Hearing

The Court briefly addresses the issue of an evidentiary hearing. Petitioner's habeas Petition does not explicitly move for an evidentiary hearing. "In habeas proceedings, an evidentiary hearing is required when the petitioner's allegations, if proven, would establish the right to relief." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (citing *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994); and *Townsend v. Sain*, 372 U.S. 293, 312 (1963)). "However, an evidentiary hearing is *not* required on issues that can be resolved by reference to the state court record." *Id.* (citing *Campbell*, 18 F.3d at 679; and *United States v. Moore*, 921 F.2d 207, 211 (9th Cir. 1990); and *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1986)).

The parties generally do not dispute the facts and Petitioner's arguments were for legal, not factual error. Accordingly, the issues Petitioner raised may be resolved to the state court record and an evidentiary hearing is not warranted.

## IV. Certificate of Appealability

Petitioner does not request a certificate of appealability. When a district court enters a final order adverse to a petitioner in a habeas proceeding, it must either issue or deny a certificate of appealability, which is required to appeal a final order in a habeas corpus proceeding. *See* 28 U.S.C. § 2253(c)(1)(A). A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller–El*, 537 U.S. at 335–36. The federal rules governing habeas cases brought by state prisoners require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. For the reasons set forth above, Petitioner has not shown "that reasonable jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 743, 484 (2000). Accordingly, the Court **DECLINES** to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the R&R, (ECF No. 18), and **DENIES** each claim of Petitioner's Petition for Habeas Corpus, (ECF No. 1). Because this Order concludes litigation in this matter, the Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: May 18, 2018

Hon. Janis L. Sammartino
United States District Judge